**No.**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

TRUE HEALTH CHIROPRACTIC, INC. and
MCLAUGHLIN CHIROPRACTIC ASSOCIATES, INC.,
individually and as representatives of
a class of similarly situated persons,

*Plaintiffs-Petitioners,*

v.

MCKESSON CORPORATION and
MCKESSON TECHNOLOGIES, INC.,

*Defendants-Respondents.*

Petition for Permission to Appeal from the United States District Court
for the Northern District of California
No. 4:13-cv-02219-HSG (Hon. Haywood S. Gilliam, Jr.)

## PLAINTIFFS-PETITIONERS' RULE 23(f) PETITION FOR PERMISSION TO APPEAL ORDER DENYING CLASS CERTIFICATION

Glenn L. Hara
Anderson + Wanca
3701 Algonquin Road, Suite 500
Rolling Meadows, IL  60008
Telephone:  (847) 368-1500
Facsimile:  (847) 368-1501
ghara@andersonwanca.com

Willem F. Jonckheer
Schubert Jonckheer & Kolbe LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA  94111
Telephone:  (415) 788-4220
Facsimile:  (415) 788-0161
wjonckheer@schubertlawfirm.com

*Attorneys for Plaintiffs-Petitioners*

**<u>Rule 26.1 Corporate Disclosure Statement</u>**

Plaintiff-Petitioner True Health Chiropractic, Inc. states that it has no parent corporation, and no publicly held corporation owns 10% or more of its stock. Plaintiff-Petitioner McLaughlin Chiropractic Associates, Inc. states that it has no parent corporation, and no publicly held corporation owns 10% or more of its stock.

Dated: June 5, 2026

*/s/ Glenn L. Hara*
Glenn L. Hara
*Counsel for Plaintiffs-Petitioners*

**TABLE OF CONTENTS**

**Page(s)**

Corporate Disclosure Statement

Introduction ................................................................................... 1

Question Presented .......................................................................... 2

Relief Sought .................................................................................. 2

Facts Relevant to Question Presented ................................................ 2

Reasons the Appeal Should Be Allowed ............................................ 8

I.      Review Is Warranted Because the Order Is Based on Erroneous Legal Principles ........................................................................ 8

      A.      The Order asked whether an online fax service is itself a fax machine, rather than whether the equipment used by the service has the requisite statutory capacity ..................................... 8

      B.      The TCPA covers faxes sent to equipment used by online fax services .................................................................................. 9

      C.      At a minimum, any ambiguity must be resolved in favor of the TCPA-protected recipients ................................................ 14

      D.      Once the TCPA is applied to the relevant equipment, the Order's predominance and superiority rationale disappears ... 14

II.     Review Is Warranted Because the Order Is Internally Inconsistent ........ 15

      A.      The Order denies certification based on technological categories that it elsewhere describes as unclear and immaterial . 16

      B.      The Order adopts *Amerifactors'* discussion of "current" online fax services without explaining why that technology governs faxes sent in 2009–2010 ..................................... 16

C.     The Order states the TCPA is unambiguous,
but it relies on ambiguity-resolving tools while giving
no operative role to the remedial-statute canon ............................ 17

III.    The Question Is Important, Recurring, and Likely to Evade
Effective Review.................................................................................. 18

A.     Modern fax technology makes this issue recurring ....................... 19

B.     Rule 23(f) review avoids unnecessary jurisdictional
disputes in this unusual post-judgment posture ............................ 19

Conclusion ................................................................................................... 20

Certificate of Compliance

Certificate of Service

# TABLE OF AUTHORITIES

**CASES**                                                                                              **Pages(s)**

*Career Counseling, Inc. v. AmeriFactors Fin. Grp., LLC,*
  91 F.4th 202 (4th Cir. 2024) ............................................................. 6, 10

*Chamberlan v. Ford Motor Co.,*
  402 F.3d 952 (9th Cir. 2005) ............................................................. 8, 18

*Dep. Guar. Nat'l Bank v. Roper,*
  445 U.S. 326 (1980) ................................................................................ 20

*Leyva v. Medline Indus. Inc.,*
  716 F.3d 510 (9th Cir. 2013) ...................................................... 8, 15, 17

*Lyngaas v. Curaden AG,*
  992 F.3d 412 (6th Cir. 2021) ...................................................... 6, 10, 11

*Marx v. Gen. Revenue Corp.,*
  568 U.S. 371 (2013) ................................................................................ 10

*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.,*
  606 U.S. 146 (2025) ............................................................................. 1, 5

*Meyer v. Portfolio Recovery Assocs., LLC,*
  707 F.3d 1036 (9th Cir. 2012) ............................................................... 12

*Microsoft Corp. v. Baker,*
  137 S. Ct. 1702 (2017) ........................................................................... 20

*NLRB v. SW Gen., Inc.,*
  137 S. Ct. 929 (2017) ............................................................................. 10

*Panzarella v. Navient Sols., Inc.,*
  37 F.4th 867 (3d Cir. 2022) ................................................................... 10

*Satterfield v. Simon & Schuster, Inc.,*
  569 F.3d 946 (9th Cir. 2009) ................................................................. 12

# TABLE OF AUTHORITIES

**CASES**                                                        **Pages(s)**

*Skidmore v. Swift & Co.*,
    323 U.S. 134 (1944) .................................................................... 13

*True Health Chiropractic, Inc. v. McKesson Corp.*,
    896 F.3d 923 (9th Cir. 2018) ....................................................... 3

*True Health Chiropractic, Inc. v. McKesson Corp.*,
    2023 WL 7015279 (9th Cir. Oct. 25, 2023) .................................. 5

*U.S. Parole Comm'n v. Geraghty*,
    445 U.S. 388 (1980) .................................................................... 20

*United States v. Hinkson*,
    585 F.3d 1247 (9th Cir. 2009) ..................................................... 15

*Van Patten v. Vertical Fitness Grp., LLC*,
    847 F.3d 1037 (9th Cir. 2017) ............................................ 7, 14, 18

**STATUTES**

47 U.S.C. § 227(a)(3) ..................................................... 2, 6, 9–12

47 U.S.C. § 227(b)(1)(C) ........................................................... 10

**RULES**

Fed. R. App. P. 5 .......................................................................... 2

Fed. R. Civ. P. 23 ......................................................................... 8

Fed. R. Civ. P. 23(b)(3) ...................................................... 1, 2, 16

Fed. R. Civ. P. 23(f) ......................................... 2, 3, 8, 15, 17–20

## TABLE OF AUTHORITIES

**ADMINISTRATIVE MATERIALS**                                             **Pages(s)**

*In re Amerifactors Fin. Grp., LLC Pet. for Expedited Declaratory Ruling*,
    2019 WL 6712128 (CGAB Dec. 9, 2019) .............................. 4–6, 13–14, 16–17

*In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*,
    18 FCC Rcd. 14014 (FCC July 3, 2003)..................................... 6, 12–13, 16–17

*In re WestFax, Inc. Pet. for Consideration & Clarification*,
    30 FCC Rcd. 8620, 2015 WL 5120880 (CGAB Aug. 28, 2015)....... 6, 14, 16–17

**LEGISLATIVE MATERIALS**

H.R. Rep. No. 102-317 (1991) ..........................................................................11–12

### Introduction

This Petition presents a pure, dispositive class-certification question: whether a TCPA junk-fax class may be denied certification on the basis that some recipients may have received the defendant's fax advertisements through an "online fax service" ("OFS"), rather than a "stand-alone" fax machine. The answer controls class certification. The district court denied certification because it concluded that OFS users are categorically outside the TCPA and cannot readily be distinguished from "stand-alone" fax machine users and excluded from the class. If that legal premise is wrong, the only basis for denying certification disappears.

This issue is important, unsettled, and certification-dispositive in this case and other TCPA fax cases in this Circuit. The FCC's rulings on the subject point in different directions; the Sixth and Fourth Circuits are divided on the question; and the Supreme Court expressly declined to decide the issue in this very case. *See McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 169 (2025). The district court's Order reflects that uncertainty. Its Rule 23(b)(3) conclusion depends on technological distinctions the Order elsewhere describes as unclear and immaterial, and its statutory analysis claims the TCPA is "unambiguous" while simultaneously relying on ambiguity-resolving tools and declining to apply the remedial-statute canon in Plaintiffs' favor. The Court should grant review of the Order and provide guidance to the lower courts on these issues.

## Question Presented

Whether the district court manifestly erred in denying certification of a TCPA fax class under Rule 23(b)(3) based on Plaintiffs' inability to identify which recipients used online fax services, where the TCPA asks whether the fax was sent to equipment with the capacity described in 47 U.S.C. § 227(a)(3), not whether the recipient's commercial service label is itself a "telephone facsimile machine."

## Relief Sought

Pursuant to Fed. R. Civ. P. 23(f) and Fed. R. App. P. 5, Plaintiffs request permission to appeal from the district court's May 22, 2026 Order denying Plaintiffs' Second Renewed Motion for Class Certification.

## Facts Relevant to Question Presented

This case concerns McKesson's transmission of fax advertisements to users and prospective users of its medical-management software products in 2009–2010. Plaintiffs True Health Chiropractic, Inc. and McLaughlin Chiropractic Associates, Inc. alleged that McKesson sent unsolicited fax advertisements without the "prior express invitation or permission" required by the TCPA. (Doc. 90 ¶¶ 1–2, 14–18).

McKesson asserted consent-based defenses from the beginning, but those defenses were narrowed through discovery. Magistrate Judge Ryu ordered McKesson to identify each type of act it claimed showed express permission, explain how that act qualified as permission, and identify each recipient allegedly giving that type of permission. (Doc. 178 at 12; Doc. 331 at 2, 26). After McKesson failed to

2

provide the required response, Magistrate Judge Ryu granted Plaintiffs' sanctions motion, rejected as "flagrantly unbelievable" McKesson's position that the prior order was merely a suggestion, and required McKesson to identify "every putative class member who supposedly gave permission and explain how that recipient gave permission." (Doc. 178 at 11–12; Doc. 331 at 26). McKesson did not object to that sanctions order. (Doc. 331 at 26).

Plaintiffs first sought class certification in 2015. The district court denied certification based on concerns about individualized consent issues. (Doc. 260 at 8–9). Plaintiffs sought Rule 23(f) review. This Court granted review and reversed in large part, holding that the proposed Exhibit A-only Class satisfied predominance. *True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 932 (9th Cir. 2018).

On remand, the district court certified the Exhibit A-only Class in August 2019 after denying McKesson's summary-judgment motion. (Doc. 331 at 28). The court rejected McKesson's attempt to rely on new claimed "consent" evidence, explaining that doing so would violate the law of the case and would be unreasonable given McKesson's prior discovery conduct, the sanctions order, and McKesson's failure to object. (*Id.* at 25–27).

The case changed only after the FCC's Consumer & Governmental Affairs Bureau issued the *Amerifactors* ruling in December 2019.[1] As the Order recounts, *Amerifactors* found that "online fax services" are not "telephone facsimile machines" and suggested that unsolicited faxes sent to such services fall outside the TCPA. (Ex. A at 1). McKesson moved to decertify, arguing that there was no common proof showing which class members received the faxes by OFS rather than by stand-alone fax machine. (Doc. 362 at 7; Ex. A at 1–2).

The district court agreed that then-governing Ninth Circuit law required it to treat *Amerifactors* as binding, but it did not immediately decertify the entire class. Instead, it modified the certified class into an Online Fax Services Class and a Stand-Alone Fax Machine Class. (Doc. 393 at 11–13; Ex. A at 2). The court then entered summary judgment against the OFS Class, concluding that *Amerifactors* foreclosed TCPA liability for faxes received through OFS. (Doc. 393 at 9–11; Ex. A at 2). The court later determined that Plaintiffs' subpoena method did not provide a reliable classwide way to separate OFS users from stand-alone fax-machine users and decertified the Stand-Alone Fax Machine Class. (Doc. 487 at 1–3; Ex. A at 2).

After those class-certification rulings, the case proceeded to a bench trial on Plaintiffs' individual claims. Following trial, the district court entered judgment for

---

[1] *In re Amerifactors Fin. Group, LLC Pet.*, 2019 WL 6712128 (CGAB Dec. 9, 2019).

True Health and McLaughlin. (Doc. 536 at 1). The court awarded True Health $500 for one fax and McLaughlin $6,000 for twelve faxes, and found that neither the product registration forms nor the end-user license agreement constituted prior express invitation or permission to send fax advertisements. (Doc. 536 at 7, 10–11). The district court also found the faxes sent to the named Plaintiffs were TCPA advertisements; judgment was entered for the named Plaintiffs on their individual TCPA claims. (Doc. 536 at 7–8, 10–11).

The parties cross-appealed, and this Court affirmed. *True Health Chiropractic, Inc. v. McKesson Corp.*, 2023 WL 7015279 (9th Cir. Oct. 25, 2023) (unpublished). On the class issues, it held that the district court was bound by *Amerifactors* under the Hobbs Act. *Id.* at *2. On McKesson's appeal, it affirmed the individual judgments for Plaintiffs and rejected McKesson's consent defenses. *Id.* at *1. Plaintiffs sought Supreme Court review of the Hobbs Act issue. McKesson did not seek review of the judgment for the named Plaintiffs.

The Supreme Court reversed on June 20, 2025. *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146 (2025). It held that the Hobbs Act does not preclude district courts in TCPA enforcement proceedings from independently assessing whether an agency's statutory interpretation is correct. *Id.* at 155. The Supreme Court did not decide whether the FCC correctly interpreted "telephone facsimile machine," leaving that question for remand. *Id.* at 169.

That question is unsettled. The FCC's own guidance points in different directions: the 2003 full-Commission order[2] and the 2015 WestFax ruling[3] treated faxes sent to computers, modems, and fax servers as covered, regardless of whether the end-user views the fax on a computer screen or a piece of paper, while *Amerifactors* reached the opposite result for "current online fax services." (Doc. 573 at 11–18; Ex. A at 15–18). The courts of appeals are divided as well. The Sixth Circuit has held that the TCPA is not limited to stand-alone fax machines and includes equipment used to receive electronic faxes, *see Lyngaas v. Curaden AG*, 992 F.3d 412, 425–27 (6th Cir. 2021), while the Fourth Circuit adopted *Amerifactors'* narrower view in *Career Counseling, Inc. v. AmeriFactors Fin. Grp., LLC*, 91 F.4th 202 (4th Cir. 2024). (Doc. 573 at 5–10; Ex. A at 10–12).

On remand, Plaintiffs filed their Second Renewed Motion for Class Certification. (Doc. 573; Ex. A at 1). Plaintiffs asked the district court to certify the class it had certified in 2019, now that *Amerifactors* was no longer binding. Plaintiffs argued that the TCPA asks whether the fax was sent to equipment with the capacity described in § 227(a)(3), not whether the recipient used a commercial service labeled an "online fax service." (Doc. 573 at 5–10). Plaintiffs also argued that any ambiguity

---

[2] *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14134 ¶ 201 (FCC July 3, 2003).

[3] *In re WestFax, Inc. Petition for Consideration & Clarification*, 30 FCC Rcd. 8620, 2015 WL 5120880 (CGAB Aug. 28, 2015).

must be resolved in favor of the recipients the TCPA protects under *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037 (9th Cir. 2017), and that McKesson's distinction between older "efax" technology and modern "online fax services" did not support denying certification for faxes sent in 2009–2010. (Doc. 573 at 10–18; Doc. 583 at 5–6, 8).

The district court denied certification again. It framed the key issue as whether an "online fax service" qualifies as a "telephone facsimile machine." (Ex. A at 4). The Order stated that the distinction between an "efax" and an "online fax service" is "somewhat unclear," and that there is no classwide method to separate class members who used online fax services, stand-alone fax machines, or "some other service in between." (*Id.* at 2). The Order nevertheless concluded that online fax services are categorically outside the TCPA and that, because Plaintiffs could not identify and exclude those recipients through classwide proof, individualized issues predominated and class treatment was not superior. (*Id.* at 18).

The Order did not disturb the individual judgments or the rejection of McKesson's consent defenses. Its only basis for denying certification was the conclusion that some absent recipients may have used online fax services and that Plaintiffs could not identify and exclude those recipients through classwide proof. (Ex. A at 18–19).

**<u>Reasons the Appeal Should Be Allowed</u>**

**I.    Review Is Warranted Because the Order Is Based on Erroneous Legal Principles.**

Rule 23(f) gives the Court "unfettered discretion . . . akin to the discretion exercised by the Supreme Court in acting on a petition for certiorari." Fed. R. Civ. P. 23 (advisory committee note). Rule 23(f) review is warranted where a certification ruling rests on manifest legal error. *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 959 (9th Cir. 2005). A district court abuses its discretion when its ruling is based on an erroneous view of the law. *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 513 (9th Cir. 2013). Under *Chamberlan*, manifest legal error independently warrants review, even in the absence of the traditional "death-knell" factor. 402 F.3d at 959. Here, Plaintiffs do not principally rely on "death knell" because they have already obtained individual judgments, but the Order's predominance and superiority rulings turn entirely on the faulty legal premise that faxes received through equipment used by online fax services are categorically outside the TCPA.

**A.    The Order asked whether an online fax service is itself a fax machine, rather than whether the equipment used by the service has the requisite statutory capacity.**

The Order's statutory analysis proceeds from the wrong question. The district court stated that the parties agreed "the key issue" was whether an "online fax service" qualifies as a "telephone facsimile machine." (Ex. A at 4). Plaintiffs did not agree to that formulation. Plaintiffs' position is not that a commercial service is itself

8

a machine. It is that the equipment used to provide online fax service has the capacity described in § 227(a)(3). (Doc. 573 at 5–10). A service label does not determine TCPA coverage; the statutory definition turns on the capacity of "equipment."

That erroneous framing effectively predetermined the outcome. If the question is whether an "online fax service" is literally a "telephone facsimile machine," Plaintiffs lose by definition. But § 227(a)(3) defines a fax machine by reference to equipment and capacity, not service labels. The proper question is whether the equipment to which the fax was sent had the capacity to receive an electronic signal over a regular telephone line and the capacity to transcribe text or images onto paper. That error led directly to the denial of certification here because it made Plaintiffs' inability to identify "online fax service" users dispositive, even though the relevant statutory question turns on equipment and capacity.

## B. The TCPA covers faxes sent to equipment used by online fax services.

Section 227(a)(3) defines "telephone facsimile machine" as "equipment" with the capacity to transcribe text or images from an electronic signal received over a regular telephone line onto paper. It does not require a single stand-alone device. It does not require automatic printing. And it does not exclude equipment because it is used to provide a cloud-based service. That reading follows the ordinary meaning of "equipment." The TCPA uses the same word in its ATDS definition, and courts have recognized that "equipment" may consist of multiple components that together serve

a single purpose. See *Panzarella v. Navient Sols., Inc.*, 37 F.4th 867, 872 (3d Cir. 2022). *Lyngaas* applied the same principle to § 227(a)(3), explaining that even if a computer is not itself a stand-alone fax machine, it may be part of an integrated piece of fax-receiving "equipment." 992 F.3d at 427.

The Order's principal textual inference was a negative-implication argument. It reasoned that because § 227(b)(1)(C) prohibits using a "telephone facsimile machine, computer, or other device" to send an unsolicited advertisement, but refers only to a "telephone facsimile machine" on the receiving end, Congress must have intended to exclude computers and other devices from the receiving side. (Ex. A at 6–7 & n.4). That expressio unius reasoning fails. That canon applies only when "it is fair to suppose that Congress considered the unnamed possibility and meant to say no to it." Marx v. Gen. Revenue Corp., 568 U.S. 371, 381 (2013). It applies only when context supports a "sensible inference" that the omitted term was meant to be excluded. NLRB v. SW Gen., Inc., 137 S. Ct. 929, 940 (2017). That inference is not sensible here. Congress did not define "telephone facsimile machine" as a stand-alone fax device; it defined it functionally as "equipment" with specified capacity. 47 U.S.C. § 227(a)(3). The Order and *Career Counseling* invert the canon by using the omission of "computer" from the receiving clause to narrow a definition Congress deliberately framed in broader, capacity-based terms.

10

The different wording for sending and receiving devices does not support the Order's narrow reading. The use of "telephone facsimile machine, computer, or other device" on one end and "telephone facsimile machine" on the other end reflects Congress's concern that fax advertisers could use computers and other high-volume tools to broadcast junk faxes. Congress understood that "[a]dvertisers have also seized on facsimile machines, often coupled to personal computers," and that an advertiser's fax machine could "deliver tens of thousands of unsolicited messages per week to other facsimile machines across the country." H.R. Rep. No. 102-317, at 6–7 (1991). By including "computer, or other device" on the sending side, Congress prevented senders from avoiding liability based on the particular transmission hardware they used.

The receiving side is different because Congress separately defined the protected receiving endpoint as a "telephone facsimile machine"—not as a stand-alone box, but as "equipment" with specified fax capacity. 47 U.S.C. § 227(a)(3). That definition captures equipment capable of receiving fax signals and transcribing them onto paper; it does not require the receiving equipment to be a single, self-contained device. As the Sixth Circuit explained, "a computer, as a stand-alone device, can be distinct from a telephone facsimile machine and yet part of one as an integrated piece of 'equipment.'" Lyngaas, 992 F.3d at 427. Reading the omission of

11

"computer" from the receiving clause to exclude any receiving system that includes a computer or server ignores the definition Congress actually enacted.

The same is true of "capacity." In the TCPA context, this Court has held that "capacity" does not require present or automatic use of a function; equipment need only have the ability to perform it. *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009). That matters because the Order treated the absence of automatic printing as dispositive. But § 227(a)(3) asks whether the equipment has the capacity to transcribe the received fax signal onto paper, not whether it automatically does so every time a fax arrives.

Nor was Congress concerned only with wasted paper and ink. The 2003 Commission Order recognized that Congress acted in response to "the interference, interruptions, and expense" caused by junk faxes. *In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14134 ¶ 201 (2003) (quoting H.R. Rep. No. 102-317, at 25). The language about "interference, interruptions and expense" caused by junk faxes was from Congress, not the FCC. H.R. Rep. No. 102-317, at 25. The Order's narrow focus on automatic printing and tied-up stand-alone fax lines therefore does not account for the broader harms Congress identified.

12

The Order itself recognized the key statutory predicates. It acknowledged that a cloud-based service is "hosted and operated on a series of physical devices, including the recipient fax server," and that the parties did not clearly dispute that an online fax service can receive an electronic signal over a regular telephone line. (Ex. A at 6 n.4, 10–11). Plaintiffs' evidence showed that online fax service faxes are sent to ten-digit fax numbers, received by fax servers using the T.30 protocol, converted into PDF or TIFF images, and then forwarded or stored for the subscriber. (Doc. 583 at 3; Doc. 573-10 ¶¶ 49–50). That is enough to present a statutory-capacity question—not a categorical reason to exclude every OFS recipient from the TCPA or to deny certification.

The full FCC's 2003 Order is consistent with that reading. The Commission considered comments aimed at "eFax.com and similar Web-based service bureaus" that received fax transmissions through fax servers and converted them into email attachments. (Doc. 573 at 12–14). It rejected the argument that such transmissions fall outside the TCPA, explaining that a stand-alone fax machine is only "one device" used for faxing and that developing technologies permit fax messages to be sent and received "in a myriad of ways." (Doc. 573 at 14). That full-Commission interpretation is more persuasive than Amerifactors' later contrary Bureau-level ruling under *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944), because it was issued by the Commission in notice-and-comment rulemaking, directly considered

13

and rejected the same eFax/fax-server arguments, and is consistent with the 2015 WestFax ruling; Amerifactors was a later Bureau ruling that changed course and is inconsistent with those earlier pronouncements.

### C. At a minimum, any ambiguity must be resolved in favor of the TCPA-protected recipients.

At minimum, the competing FCC rulings, the Fourth/Sixth Circuit split, and the Order's reliance on multiple interpretive tools establish ambiguity. *Van Patten* supplies the Ninth Circuit rule for that situation: because the TCPA is a remedial statute intended to protect consumers from unwanted automated calls and messages, it should be construed in accordance with that purpose. 847 F.3d at 1047.

That means any genuine ambiguity should be resolved in favor of fax recipients, not fax senders. This is particularly true where a contrary construction gives fax advertisers such as McKesson the unfettered ability to inundate health-care providers like Plaintiffs with unsolicited fax ads, knowing those fax ads must be read and considered by the care provider, lest an important patient-related fax be missed. Fax advertisers rely on that circumstance when they send fax ads.

### D. Once the TCPA is applied to the relevant equipment, the Order's predominance and superiority rationale disappears.

The Order denied certification on the basis that Plaintiffs cannot identify which recipients used online fax services. But that inquiry matters only if such recipients are categorically outside the TCPA. Plaintiffs do not concede that their

14

subpoena process was insufficient to identify OFS recipients in 2009–2010, but that fact-bound issue matters only if OFS receipt is legally disqualifying. Once the statute is applied to the relevant equipment, the OFS distinction no longer creates an individualized liability issue. The common questions that supported certification in 2019 remain common, including McKesson's transmission of the faxes, the faxes' status as advertisements, and McKesson's classwide consent theories. The Order's predominance and superiority rationale for denying certification therefore disappears.

In sum, the Order rests on the erroneous legal conclusion that faxes received through equipment used by online fax services are categorically excluded from the TCPA. Rule 23(f) review is warranted to correct that manifest, certification-dispositive error.

## II. Review is Warranted Because the Order Is Internally Inconsistent.

Abuse-of-discretion review is deferential, but not toothless. A district court abuses its discretion when its ruling is "illogical, implausible, or without support in inferences that may be drawn from the facts in the record." *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 513 (9th Cir. 2013) (quoting *United States v. Hinkson*, 585 F.3d 1247, 1263 (9th Cir. 2009)). The Order fails that standard because its certification ruling rests on internally inconsistent premises.

15

**A.** **The Order denies certification based on technological categories that it elsewhere describes as unclear and immaterial.**

The Order stated that "[t]he precise distinction between an 'efax' and an 'online fax service' is somewhat unclear," and that Plaintiffs and McKesson used the terms differently. (Ex. A at 2, n.1). The court further stated that there may be "some other service in between" online fax services and stand-alone fax machines. (*Id.*) Yet the Order denied certification because Plaintiffs lacked a classwide method to sort recipients among those very categories. (*Id.* at 18).

That reasoning is internally inconsistent. If the categories are unclear, disputed, and include intermediate technologies, they cannot supply the dispositive liability line for Rule 23(b)(3) purposes. And if the "precise difference is not important," as the Order stated (Ex. A at 2 n.1), then Plaintiffs' inability to classify each recipient by that difference cannot be the dispositive individualized issue defeating predominance. The result is a certification denial based on a technological taxonomy the Order never defines and elsewhere treats as immaterial.

**B.** **The Order adopts *Amerifactors*' discussion of "current" online fax services without explaining why that technology governs faxes sent in 2009–2010.**

The Order accepts McKesson's attempt to distinguish the 2003 and 2015 FCC rulings as involving older "efax" technology while treating *Amerifactors* as addressing modern online fax services. (Ex. A at 17–18). But the faxes in this case were sent in 2009–2010, at the very time the WestFax petition was filed and years

16

before *Amerifactors* addressed "current online fax services." (Doc. 583 at 5–6). The Order never explains why recipients of faxes sent in 2009–2010 should be presumed to have used the later technology described in *Amerifactors* rather than the technology addressed by the 2003 Order and 2015 WestFax ruling. The Order depends on the unexamined assumption that some unidentified portion of the class used the *Amerifactors* category of "current online fax services" nearly a decade before *Amerifactors* addressed that category.

That unexplained assumption matters. If class certification in this case is to turn on McKesson's distinction between older efax technology and "current" online fax services, the fact that the faxes were sent in 2009–2010 cuts against McKesson— not Plaintiffs. The Order made Plaintiffs' inability to identify users of "current" online fax services dispositive of predominance without first explaining why that 2019 category describes the technology used by recipients of faxes sent in 2009– 2010. The Order is therefore "illogical, implausible, or without support in inferences that may be drawn from the facts in the record," warranting Rule 23(f) review. *Leyva*, 716 F.3d at 513.

> **C. The Order states the TCPA is unambiguous, but it relies on ambiguity-resolving tools while giving no operative role to the remedial-statute canon.**

The Order also treats ambiguity inconsistently. It states that the TCPA is unambiguous, but reaches that conclusion only after consulting tools used to resolve

uncertainty: dictionary definitions, statutory structure, legislative history, FCC rulings, agency persuasiveness, statutory purpose, and competing judicial interpretations. (Ex. A at 5, 10–12, 15–18). The Order then declines to give operative effect to this Court's TCPA-specific remedial-statute canon on the basis that the statute is supposedly unambiguous. (Ex. A at 12 n.11).

The court used its ambiguity-resolving tools selectively. Plaintiffs did not ask the district court to disregard text. They argued that, if the FCC rulings, appellate split, and statutory-capacity language created ambiguity, then *Van Patten* required resolving that ambiguity in favor of those targeted by the unsolicited faxes, not the fax sender. (Doc. 573 at 10–11). The Order quoted *Van Patten* but did not apply it. (Ex. A at 12 n.11). That selective treatment is another reason Rule 23(f) review is warranted.

## III.     The Question Is Important, Recurring, and Likely to Evade Effective Review.

Rule 23(f) review is also appropriate when a certification ruling presents "an unsettled and fundamental issue of law relating to class actions, important both to the specific litigation and generally, that is likely to evade end-of-the-case review." *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 959 (9th Cir. 2005). This case fits that standard. The OFS issue is certification-dispositive here, has already affected other TCPA fax litigation, and will recur whenever defendants argue that

recipient-side fax technology defeats predominance. Immediate review is warranted to provide guidance in modern junk-fax cases.

### A. Modern fax technology makes this issue recurring.

The need for guidance is concrete, not theoretical. Modern faxing often occurs through fax servers (both internal and external), cloud platforms, email attachments, web portals, and connected printers rather than a single stand-alone fax machine. The OFS issue has already affected other TCPA fax litigation in this Circuit. For example, in *Dhesi v. Optum, Inc.*, No. 3:18-cv-06476-JD (N.D. Cal.), another TCPA fax case pending in the Northern District of California, proceedings were stayed pending resolution of the OFS issue in this litigation. (*See Dhesi* Doc. 128).

That stay illustrates why Rule 23(f) review is appropriate: district courts and litigants need to know whether the TCPA covers faxes received through online fax services before they can sensibly litigate certification, predominance, superiority, and case-management issues in modern fax cases. The question will continue to recur until this Court decides whether recipient-side fax technology is legally relevant to TCPA liability, or whether the relevant question is instead the statutory capacity of the equipment to which the fax was sent.

### B. Rule 23(f) review avoids unnecessary jurisdictional disputes in this unusual post-judgment posture.

This case is unusual in that it has already proceeded through final judgment, appeal, certiorari, and remand. Plaintiffs do not concede that Rule 23(f) is the only

19

available path to review. But Rule 23(f) provides the cleanest vehicle for review now. Without it, the parties may first litigate whether the named Plaintiffs' individual judgments affect later review of the class-certification ruling, even though governing precedent supports final-judgment review. *Microsoft Corp. v. Baker*, 137 S. Ct. 1702, 1707 (2017); *Dep. Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 336–40 (1980); *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 402–04 (1980). That is reason to grant review, not defer it: Rule 23(f) allows the Court to resolve the certification-dispositive issue directly, without requiring another round of threshold litigation over the proper appellate vehicle.

## Conclusion

For the foregoing reasons, the Court should grant this Petition and permit Plaintiffs to appeal from the district court's Order denying their Second Renewed Motion for Class Certification.

Respectfully submitted,

By: */s/ Glenn L. Hara*  
Glenn L. Hara  
**ANDERSON + WANCA**  
3701 Algonquin Rd., Suite 500  
Rolling Meadows, Illinois 60008  
Tel: (847) 368-1500  
Fax: (847) 368-1501  
Email: ghara@andersonwanca.com

20

## **Certificate of Compliance**

I certify that this Petition complies with the length limitation of Ninth Circuit Rule 5-2(b) because, excluding the documents listed in Federal Rules of Appellate Procedure 5(b)(1)(E) and 32(f), the Petition does not exceed 20 pages.

I further certify that this Petition complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and 32(a)(6) because it has been prepared in a proportionally spaced typeface using 14-point Times New Roman.

Dated: June 5, 2026                                                  /s/ Glenn L. Hara
                                                                                    Glenn L. Hara

# CERTIFICATE OF SERVICE

**Instructions for Electronic Filers:** For persons filing electronically, CM/ECF serves all registered CM/ECF users, and no certificate of service is required for such service. A certificate of service is required from an electronic filer, however, in the following circumstances:

- To certify that a non-user of CM/ECF has been served;
- To certify that a manual filing (not available in electronic form), has been served;
- To certify that a sealed document has been served;
- To certify that a case-initiating document, such as a petition for review, petition for permission to appeal, or petition for writ of mandamus, has been served.

**Instructions for Paper Filers:** For persons filing in paper form, service must be accomplished outside CM/ECF, and a certificate of service is required for all documents.

Case No. ＿＿＿＿＿＿＿  Case Caption True Health Chiropratic, Inc., et al v. McKesson C

I certify that on ＿＿June 5, 2026＿＿, the Petition for Permission to Appeal ＿＿＿＿＿＿＿
              (date)                    (document title)
was served by [ ] personal delivery; [ ] mail; [ ] third-party commercial carrier; or [ ] email

(with written consent) on the following persons at the addresses or email addresses shown:

(Name and Address or Email Address )

| | |
|---|---|
| Dustin Lamm Schubert | dschubert@sjk.law |
| George Demetrios Jonson | gjonson@mojolaw.com |
| Joseph R. Palmore | jpalmore@mofo.com |
| Pamela T. Johann | pamela.johann@usdoj.gov |
| Robert C. Schubert | rschubert@sjk.law |
| Tiffany Cheung | tcheung@mofo.com |
| Willem F. Jonckheer | wjonckheer@sjk.law |

＿＿Glenn L. Hara＿＿＿＿＿＿          ＿＿＿＿June 5, 2026＿＿＿＿
        Signature                               Date

01/28/2020 SCC